UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

FLEX ENERGY, LLC                    CIVIL ACTION NO. 6:09-cv-1815

VERSUS                              JUDGE DOHERTY

ST. PAUL SURPLUS LINES              MAGISTRATE JUDGE HANNA
INSURANCE CO.

## RULING

(Rec. Doc. 34)

Before this Court is the motion filed by the plaintiffs, Flex Energy, LLC and

Pennington Operating Company, LLC (collectively referred to hereinafter as "Flex"),

seeking to compel the defendant, St. Paul Surplus Lines Insurance Co., to provide

more complete responses to the plaintiffs' requests for the production of documents.

(Rec. Doc. 34).  The motion is opposed.  Oral argument was held on April 27, 2011.

Present in court were Patrick W. Gray and Amy E. A. Lee, representing the plaintiffs,

and Evan T. Caffrey, representing the defendant.  At the hearing, the undersigned

took the motion under advisement and ordered the parties to submit briefs addressing

St. Paul's assertion of a work product privilege with regard to the documents

produced in response to Flex's *subpoena duces tecum* directed to J.H. Blades & Co.

(Rec. Doc. 41).  The parties complied with that order.  (Rec. Docs. 45 and 46).  For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND INFORMATION

In this lawsuit, Flex Energy, LLC and its co-owners seek coverage under an insurance policy issued by J.H. Blades & Co., Inc. on behalf of St. Paul Surplus Lines Insurance Co.  Flex was in the process of drilling the Oak Bend LLC No. 1 Well in Vermilion Parish, Louisiana, on January 28, 2009, when the well "took a kick," i.e. an influx of high-pressured gas and fluids, at a depth of approximately 13,177 feet.  Flex attempted to control the well but ultimately decided to cement in the section of the well that was out of control and redrill the well.  There remains an unresolved issue as to whether the kick constitutes an event that triggered coverage under the St. Paul policy.

1.   ST. PAUL'S RESERVE INFORMATION

Flex argues that it is entitled to an unredacted version of all claim file notes and other documents relating to the establishment of a reserve for this claim.  St. Paul argues that this issue is moot, since it has supplemented its original document production and produced all file notes and other documents related to reserves.

Although Flex argues that the delayed production supports its position that St. Paul has acted in bad faith in adjusting the claim, that issue is not currently before the court. More important, Flex does not dispute St. Paul's contention that all documents relevant to the issue of reserves have already been produced. Therefore, with regard to the documents relating to the establishment of a reserve for this claim, Flex's motion will be denied as moot.

## 2.   WORK PRODUCT AND ATTORNEY-CLIENT PRIVILEGES

Rule 26(b) of the Federal Rules of Civil Procedure sets forth the general scope of discovery, stating that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...."  Rule 26(b)(3)(A) outlines the attorney work product privilege, which protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  The work product privilege protects two categories of materials:  ordinary work product and opinion work product, focusing on materials assembled and created in anticipation of litigation.[1]  A document is prepared in anticipation of litigation when the primary motivating purpose behind the

---

[1]     *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998).

creation of the document is to aid in possible future litigation.[2]  The party claiming the privilege bears the burden of demonstrating that it is applicable.[3]

The attorney-client privilege "protects communications from the client to the attorney made in confidence for the purpose of obtaining legal advice.  It shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney."[4]

Rule 501 of the Federal Rules of Evidence states that "in civil actions... with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a... person ... shall be determined in accordance with State law."  Because this lawsuit is based upon diversity jurisdiction,[5] St. Paul's privilege

---

[2]    *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981).

[3]    *Conoco v. Boh Bros.*, 191 F.R.D. at 118.

[4]    *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994), quoting *Wells v. Rushing*, 755 F.2d 376, 379 n. 2 (5th Cir. 1985) (citations omitted).

[5]    Rec. Doc. 1 at ¶3.

claims are governed by Louisiana law.[6]   The burden of substantiating a privilege

claim is borne by the party asserting the privilege,[7] which in this case is St. Paul.

Louisiana's attorney-client privilege is set forth in Article 506 of the Louisiana

Code of Evidence.  This statute defines the word "client" as "a person... to whom

professional legal services are rendered by a lawyer...."[8]  The statute also defines the

term "representative of the client" as "[a] person having authority to obtain

professional legal services, or to act on advice so obtained, on behalf of the client"

or as "[a]ny other person who makes or receives a confidential communication for the

purpose of effectuating legal representation for the client, while acting in the scope

of employment for the client."[9]  Louisiana's general rule of privilege states:

> A client has a privilege to refuse to disclose, and to prevent another
> person from disclosing, a confidential communication, whether oral,
> written, or otherwise, made for the purpose of facilitating the rendition
> of professional legal services to the client, as well as the perceptions,
> observations, and the like, of the mental, emotional, or physical
> condition of the client in connection with such a communication, when
> the communication is:

---

[6]     *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F.Supp. 1007, 1008 -1009 (E.D. La. 1995).

[7]     *In re E.E.O.C.*, 207 Fed.App'x 426, 431 (5th Cir. 2006), citing *United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991).

[8]     Louisiana Code of Evidence Article 506(A)(1).

[9]     Louisiana Code of Evidence Article 506(A)(2).

(1) Between the client or a representative of the client and the client's lawyer or representative of the lawyer;

* * * * * *

(4) Between representatives of the client or between a client and a representative of the client....[10]

The privilege may be claimed by the "client, the client's agent or legal representative, or the successor, trustee, or similar representative of a client that is a corporation, partnership, unincorporated association, or other organization, whether or not in existence."[11]

Flex seeks the production of four categories of documents that were listed on St. Paul's privilege logs as being protected by the attorney-client privilege and/or the work product privilege.

### a.   COMMUNICATIONS IN AUGUST 2009

Flex seeks the production of certain documents listed on St. Paul's privilege log as subject to the attorney-client privilege and the work product privilege, namely those documents designated as STP000300, STP000311, STP000312, and STP000314.  The undersigned reviewed unredacted copies of these documents *in camera*, and determined that they are e-mail communications to or from St. Paul's

---

[10]       Louisiana Code of Evidence Article 506(B).

[11]       Louisiana Code of Evidence Article 506(D).

counsel, George Lugrin and Karen Morgan.  These e-mails are actually from August 2010, after the suit was filed, and they deal with the attorneys' litigation strategy. They are protected by the attorney-client privilege.  Having determined that these documents are protected by the attorney-client privilege, the undersigned pretermits a determination of whether they might also be subject to the attorney work product privilege.  Flex's motion will be denied with regard to these documents.

### b.   COMMUNICATIONS IN JULY 2009

Flex seeks the production of certain documents designated on St. Paul's privilege log as subject to the attorney-client privilege, namely STP000152 - STP000178.  The undersigned reviewed these documents *in camera*, and determined that they are e-mail and fax communications between Paul Zatopek of St. Paul and St. Paul's counsel, George Lugrin.  These communications predate the filing of the lawsuit but they were all made for the purpose of either seeking or providing legal services.  They are protected by the attorney-client privilege.  Having determined that these documents are protected by the attorney-client privilege, the undersigned need not determine whether they might also be subject to the attorney work product privilege.  Flex's motion will be denied with regard to these documents.

### c.    COMMUNICATIONS FROM OCTOBER 8 TO OCTOBER 19, 2009

Flex seeks the production of four items listed on St. Paul's privilege log and dated during October 2009, namely STP000003, STP000004, STP000129, and STP000289. All four of these documents concern St. Paul's seeking of legal advice from its counsel, Mr. Lugrin.

The claim note designated as STP000003 was prepared on October 12, 2009, a few days after St. Paul received a letter from Flex's counsel threatening to file suit if the claim was not paid by October 16, 2009. It memorializes confidential communications between St. Paul and its counsel regarding coverage issues, future case handling by counsel, and case strategy. The undersigned finds that, upon receipt of the letter threatening litigation, there was no longer any doubt that St. Paul was anticipating that a lawsuit might be filed. From the receipt of that letter forward, St. Paul's claims notes were prepared in anticipation of litigation. Therefore, this note is protected by both the attorney-client privilege and the attorney work product privilege.

The claim note designated as STP000004 was generated on October 8, 2009 and it too was generated in response to the letter threatening litigation. It memorializes communications between St. Paul and its counsel with regard to case handling strategy. It is protected by the attorney-client privilege and the attorney

work product privilege.  The document designated as STP000289 is a duplicate of STP000004.  It is similarly protected.

The document designated as STP000129 is an e-mail communication from St. Paul to its counsel seeking legal assistance.  It is protected by the attorney-client privilege.

The four items discussed above are the only items falling within this time frame that are discussed in Flex's briefing.  Nevertheless, Flex requested *in camera* review of additional documents also dated between October 8 and October 19, 2009, namely STP000091 - STP000093, and STP000123.  The undersigned fails to understand why Flex did not articulate its challenge to the privileges asserted by St. Paul with regard to these documents.  Nevertheless, the undersigned reviewed the additional documents *in camera*.

The documents numbered STP000091 - STP000093 actually do not fall within this time frame.  They are comprised of e-mail messages dated between October 19, 2009 and November 13, 2009.  All of them postdate the filing of this lawsuit and all of them are communications between St. Paul and its counsel having to do with the lawsuit and litigation strategy.  They are subject to the attorney-client privilege.

STP000123 is an e-mail string, containing two full e-mail messages and part of a third, dated October 8, October 9, and October 12, 2009.  The most recent

message, to which the others are appended, is a communication between St. Paul and its counsel in connection with a request for legal services.  Therefore, this document is subject to the attorney-client privilege.

Flex's motion will be denied with regard to all of the challenged documents discussed in this Sub-paragraph (c).

### d.   COMMUNICATIONS AFTER OCTOBER 19, 2009

This lawsuit was filed on October 19, 2009.  In its briefing, Flex does not specifically identify the documents listed on St. Paul's privilege log for the time period after the suit was filed that it now seeks to have produced other than STP000003, which has already been determined to be protected by the attorney-client privilege.  Apparently, Flex is asking this court to review the following documents listed on the privilege log pertaining to the time period subsequent to October 19, 2009:[12]  STP000001, STP000003, STP000073-77, STP00079-82, STP000083-87, STP000091-93, STP000283-289, STP000298-299, STP000316-320, STP000321-324, STP000330-332, STP000351-353, STP000354, STP000355, STP000357-361, STP000374-376,  STP000379,  STP000382-383,  STP000387,  STP000388-392, STP000393-396, STP000397-400, STP000401, STP000402-403, STP000404-405,

---

[12]      Rec. Doc. 34-1 at 17-18; Rec. Doc. 34-2; Rec. Doc. 36-6.

STP000406, STP000409, STP000413, STP000415-419, STP000424-434, STP000435-445, STP000449-450, STP000452-453, STP000454-462, STP000465-470, STP000479-484, STP000485-490, STP000491-492, STP000508-513, and STP000514.

The undersigned reviewed each of these documents *in camera*, with the exception of STP000379, which was not provided for *in camera* review. The vast majority of these documents are e-mail communications between St. Paul and its counsel. Many of them contain an attorney's impressions or opinions. With two exceptions, the undersigned finds that all of these documents are protected by either the attorney-client privilege or the work product privilege.

The exceptions are STP000465 – 470 and STP000491 – 492. Both of these sets of documents are clearly attorney work product because they are drafts of pleadings to be filed in this lawsuit, but they may have already been produced to Flex. STP000465 – 470 is a draft of St. Paul's Rule 26 initial disclosures. If this version is identical to the version that was served on Flex in this lawsuit, then Flex already has a copy and there would be no harm in producing these pages. Similarly, STP000491 – 492 is a draft of St. Paul's corporate disclosures. Although these pages are not signed or dated, they are substantively identical to the corporate disclosure that was filed in the suit record on January 6, 2010 as Rec. Doc. 9. Therefore, Flex

has already seen the substance of this document and there would be no harm in producing these pages.

Accordingly, no decision can be made with regard to STP000379.  Flex's motion will be granted with regard to STP000491 – 492 and denied with regard to STP000465 – 470, but St. Paul will be ordered to produce STP000565 – 470 if they are substantively identical to documents already shared with Flex in this lawsuit.  The motion will be denied with regard to the other documents in the post-October 19, 2009 time frame that were challenged by Flex and are listed above in this Sub-paragraph (d).

3.   **ASSERTION OF PRIVILEGES ON BEHALF OF J.H. BLADES**

Flex directed a *subpoena duces tecum* to J.H. Blades & Co., Inc., the underwriter of the insurance policy that St. Paul's issued to Flex under which coverage is sought in this lawsuit.  In the *subpoena*, Flex sought the production of "[a]ll documents relating in any way to the Policy."[13]  Blades is not a party to this lawsuit.  St. Paul's counsel filed objections to the *subpoena duces tecum*.[14]  St. Paul's counsel do not identify themselves in the objections as counsel for Blades.  To the

---

[13]      Rec. Doc. 34-7 at 6.

[14]      Rec. Doc. 34-6 at 2.

contrary, the objection states that "St. Paul objects to this request to the extent it seeks information protected by the attorney-client privilege and the work product doctrine."[15]  St. Paul also provided Flex with a privilege log concerning its own documents and a privilege log concerning Blades's documents,[16] a first amended privilege log addressing the St. Paul documents,[17] and a first amended privilege log addressing the Blades documents.[18]   In its motion, Flex "challenges St. Paul's assertion of any privilege involving J.H. Blades & Co., Inc."[19]

According to Flex's notations on the privilege logs,[20] Flex is challenging St. Paul's assertion of a privilege as to the following Blades documents:  STP000123, STP000125, STP000127, STP000130, JHB00001, JHB00002, JHB00009, JHB000061-69, JHB000070-71, JHB000123, JHB000136, JHB000137, JHB000139 – JHB000140, JHB000403, and JHB000404.

---

[15]      Rec. Doc. 34-6 at 4.

[16]      Rec. Doc. 34-2 at 9 -17 (St. Paul's privilege log); Rec. Doc. 34-2 at 7-8 (privilege log regarding the Blades documents).

[17]      Rec. Doc. 36-6 at 1 - 11.

[18]      Rec. Doc. 36-7 at 1.

[19]      Rec. Doc. 34-1 at 21.

[20]      Rec. Doc. 34-1 at 20-22; Rec. Doc. 34-2; Rec. Doc. 36-6.

Unredacted copies of some of the challenged documents were produced after Flex filed its motion.  Accordingly, the motion will be denied as moot as to the following documents, which have already been produced:    JHB000002,[21] JHB000009,[22] JHB000061,[23] JHB000070,[24] JHB000071,[25] JHB000136,[26] and JHB000140.[27]

Additionally, Flex indicated by its notation on the First Amended Privilege Log of J.H. Blades that it is satisfied with the production of a redacted copy of JHB000139.[28]  Accordingly, the motion will be denied with regard to that document.

St. Paul asserts an attorney-client privilege and/or a work product privilege as to the following Blades documents,[29] and Flex challenges St. Paul's assertion of those

---

[21]    An unredacted copy of this document is in the record at Rec. Doc. 36-8 at 41.

[22]    An unredacted copy of this document is in the record at Rec. Doc. 36-8 at 42.

[23]    An unredacted copy of this document is in the record at Rec. Doc. 36-8 at 43.

[24]    An unredacted copy of this document is in the record at Rec. Doc. 36-8 at 44.

[25]    An unredacted copy of this document is in the record at Rec. Doc. 36-8 at 7.

[26]    An unredacted copy of this document is in the record at Rec. Doc. 36-8 at 45.

[27]    An unredacted copy of this document is in the record at Rec. Doc. 36-8 at 11.

[28]    Rec. Doc. 36-7.

[29]    See First Amended Privilege Log of J.H. Blades at Rec. Doc. 36-7.

privileges:[30]    STP000123, STP000125, STP000127, STP000130, JHB000001, JHB000062-69, JHB000123, JHB000137, JHB000403, and JHB000404.

A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter.[31]    Therefore, a motion to quash or a motion for protective order should generally be filed by the person from whom the documents or things are requested.[32] If, however, the discovery requests to the third-party concern a party's personal interest, it is proper for the party to file such a motion.  Thus, if the discovery requests seek information that may have been sent by or for the party, the party has a right to challenge the discovery.[33]  A party may not, however, challenge a subpoena directed

---

[30]      Rec. Doc. 36-7.

[31]      *Keybank Nat'l Assoc. v. Perkins Rowe Associates,* L.L.C., 2011 WL 338470, *2 (M.D. La. 2011); *Hoover v. Florida Hydro, Inc.*, 2008 WL 4467661, *3 (E.D. La. 2008).  See *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (finding that a party did not have standing to challenge a subpoena without asserting some personal right or privilege); *Weatherly v. State Farm Fire & Cas. Ins. Co*., 2009 WL 1507353, *2 (E.D. La. 2009) (stating that a party has standing to object to a subpoena directed to a nonparty if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it); *Old Towne Dev. Grp., L.L.C. v. Matthews*, 2009 WL 2021723, *1 (M.D. La. 2009) (finding that plaintiff's personal interest in the confidentiality of bank records was sufficient to confer standing); *Terwillegar v. Offshore Energy Servs., Inc.,* 2008 WL 2277879, *1 (E.D. La. 2008) (same).

[32]      *Hoover v. Florida Hydro, Inc.*, 2008 WL 4467661, *3, citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed. 1995).

[33]      *Hoover v. Florida Hydro, Inc.*, 2008 WL 4467661, *3.

to a third party on the grounds that the information sought is irrelevant or imposes an undue burden.[34]

St. Paul argues that it has standing to assert the work product privilege with regard to the documents subpoenaed from Blades.  First, St. Paul argues that Blades is a wholesale broker, which places insurance for St. Paul, and consequently is St. Paul's agent.  Rule 26(b)((3)(A) states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Therefore, St. Paul argues that the challenged Blades documents were prepared by its agent, Blades, in anticipation of litigation or for trial and, consequently, are privileged.

"Under Louisiana law, an insurance broker is generally deemed to be the agent of the insured rather than the insurer."[35]  But that is not a hard and fast rule.[36] "Whether a broker in any particular transaction acts as the agent of the insurer or

---

[34]      *Keybank v. Perkins Rowe*, 2011 WL 338470 at *2.

[35]      *Motors Insurance Company v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 204 (5th Cir. 1990).  See, also, *Tassin v. Golden Rule Ins. Co.*, 94–0362 (La. App. 1 Cir.12/22/94), 649 So.2d 1050, 1054.

[36]      *Tiner v. Aetna Life Ins. Co.*, 291 So.2d 774, 778 (La. 1974).

insured is a question of fact dependent on the particular circumstances of the case."[37] An agency relationship cannot be presumed; instead, facts must exist that support a reasonable inference that an agency relationship has been entered into.[38]

An agent is one who acts for or in place of another by authority from the latter.[39] "As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority."[40] The Fifth Circuit has broadly stated that a broker who solicits business for more than one insurer, has no power to bind the insurer without permission, or who is asked by the client to procure coverage wherever possible at the best price, is not an agent of the insurer, even if he uses application forms or advertising decals with the insurer's name.[41] But the Louisiana Supreme Court has determined that "[a] broker who procures insurance which is accepted and issued by an insurance company pursuant to application forms furnished

---

[37]     *State v. National Union Fire Ins. Co.*, 2020-0689 (La. App. 1 Cir. 02/11/11), 56 So.3d 1236, 1244, citing *Tassin v. Golden Rule Ins. Co.*, 94–0362 (La. App. 1 Cir.12/22/94), 649 So.2d 1050, 1054.  See, also, *Tiner v. Aetna*, 291 So.2d at 778; *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 204 (5th Cir. 1990).

[38]     See, e.g., *Smason v. Celtic Life Ins. Co.*, 615 So.2d 1079, 1084 (La. App. 4 Cir.), *writ denied*, 618 So.2d 416 (La. 1993).

[39]     *Ross v. Ross*, 2002-2984 (La. 10/21/03), 857 So.2d 384, 397 n 9.

[40]     *Boulos v. Morrison*, 503 So.2d 1, 3 (La. 1987).  See, also, *McManus v. Southern United Fire Ins.*, 2000-1456 (La. App. 3 Cir 03/21/01), 801 So.2d 392, 394.

[41]     *Motors Ins. Co. v. Bud's Boat Rental*, 917 F.2d at 204.

to the broker by the company is considered the agent of such company in the issuance of the policy."[42]  The jurisprudence is also clear that an agreement between an insurer and a broker is not necessarily dispositive of the issue of whether an agency relationship exists between them.[43]  This is only one factor to be considered.[44]  Furthermore, "simply because a person sells insurance for more than one company does not preclude him from being an agent of all, or any, of them."[45]  One Louisiana court identified five factors relevant to determining whether a broker was an insurer's agent:  (1) whether the agent had a direct relationship with the insurer; (2) whether the agent was the insurer's agent in fact; (3) whether there was an ongoing, prior relationship between the agent and the insurer; (4) whether either the agent or the insurer had control over the other; (5) whether the insurer appointed the agent as its agent.[46]  Therefore, under Louisiana law, a broker can be an agent of an insurer from

---

[42]     *Tassin v. Golden Rule*, 649 So.2d at 1054, citing *Tiner v. Aetna*, 291 So.2d at 777. See, also, *Wiltz v. Louisiana Farm Bureau Casualty Insurance Co*., 558 So.2d 683, 685 (La. App. 1 Cir.), *writ denied*, 559 So.2d 1386 (La. 1990); *Romero v. Pough*, 532 So.2d 279, 281 (La. App. 3 Cir.), *writ denied*, 533 So.2d 381 (La. 1988).

[43]     *Kidd v. Independent Fire Ins. Co*., 668 So.2d 406, 410 (La. App. 4 Cir. 1996), citing *Britten v. Payne*, 381 So.2d 855, 857-858 (La. App. 1 Cir. 1980), *writ denied*, 384 So.2d 800 (La. 1980).

[44]     *Kidd v. Independent Fire*, 668 So.2d at 410.

[45]     *Kidd v. Independent Fire*, 668 So.2d at 410.

[46]     *Smason v. Celtic Life*, 615 So.2d at 1084

whom he secures a policy,[47] if the facts particular to the relationship between the broker and the insurer support that conclusion.

In this case, it is clear that Blades had an ongoing relationship with St. Paul, arising out of a contract binding the two of them.  Although the contract was not produced for this Court's review, an employee of Blades and an employee of St. Paul both confirmed that a contractual relationship exists and that Blades had underwriting authority for St. Paul under certain circumstances.[48]  Significantly, Blades could – and in this particular case, did – bind St. Paul.  Additionally, in connection with the insurance policy that St. Paul issued to Flex, Blades negotiated, placed, and underwrote the policy, prepared and issued the policy binder, collected the premiums, and delivered the policy to Flex's insurance agent.[49]  After the instant coverage dispute arose, the claim was communicated to Blades rather than directly to St. Paul,[50] Blades notified St. Paul of the claim,[51] and Blades then provided St. Paul with a copy of the policy.[52]  Flex argues that Blades had no role in interpreting the policy and was

---

[47]    See, e.g., *Tiner v. Aetna*, 291 So.2d at 778.

[48]    Rec. Doc. 45-3 (Zatopek declaration); Rec. Doc. 45-1 at 13-14 (Edelman deposition).

[49]    Rec. Doc. 45-3 (Zatopek declaration).

[50]    Rec. Doc. 46-1 at 15, 46.

[51]    Rec. Doc. 46-1 at 23-24, 46, 58.

[52]    Rec. Doc. 46-1 at 15, 23-24.

not aligned with St. Paul with regard to coverage issues. That is immaterial. What is important is that Blades was acting on behalf of St. Paul when the policy was entered into and continued to act on behalf of St. Paul for the purpose of collecting premiums and reporting claims. St. Paul even had to go to Blades to obtain a copy of the policy after this claim arose. These facts militate in favor of the conclusion that, under these circumstances, Blades was St. Paul's agent under Louisiana law and its representative for purposes of the applicability of the attorney-client and work-product privileges. The undersigned so finds.

Accordingly, St. Paul has standing to assert the attorney-client privilege with regard to those documents that were in Blades's possession but include communications with St. Paul's counsel, and St. Paul has standing to assert the work-product doctrine with regard to those documents that were in Blades's possession and were created in anticipation of litigation or for trial purposes or contain the opinions of St. Paul's legal counsel.

JHB000001 is correspondence from Teri Krause at Blades to St. Paul's attorneys Lugrin and Morgan. "An insurance broker can act as an agent when 'its communications are made for the purpose of facilitating the rendition of professional

legal services to the client.'"[53]   The undersigned's *in camera* review of this document reveals that this correspondence was prepared for such a purpose.  It is, therefore, protected by the attorney-client privilege.  Because it was prepared in connection with this litigation, and Blades has been found to be St. Paul's representative, it is also protected by the work-product privilege.  This document need not be produced.

JHB000062-JHB000069 are e-mail messages between Mr. Zatopek and Mr. Lugrin, which St. Paul argues were inadvertently shared with Blades.  "[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party."[54]   Disclosure does waive protection, however, if it substantially increases the opportunity for potential adversaries to obtain the information.[55]   In this case, there is no evidence that St. Paul's disclosure of the e-mail string to Blades increased the opportunity for Flex to obtain the information.  The very nature of the pending motion suggests otherwise.  Furthermore, Blades was acting as St. Paul's

---

[53]      *In re Tetra Technologies, Inc. Securities Litigation*, 2010 WL 1335431, *5 (S.D. Tex. Apr. 5, 2010), citing *Navitagors Management Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 2009 WL 465584, *4 (E.D. Mo. Feb. 24, 2009), and *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F.Supp. 107, 1009-10 (E.D. La. 1995).

[54]      *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000).

[55]      *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010), citing 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2024 (3d ed. 2010).

representative when it received these confidential communications, which were originally drafted for the purpose of effectuating legal representation for St. Paul. Consequently, these documents remain subject to the attorney-client privilege as well as the work product privilege and need not be produced.

The documents numbered JHB000123 and JHB000137 were prepared by persons at Blades or at St. Paul with regard to this litigation. They are work product and need not be produced.

JHB000403 and JHB000404 contain confidential information communicated by St. Paul's legal counsel for the purpose of effectuating legal representation. Therefore, these documents are privileged.

STP000123 is an e-mail string that has already been determined to be protected by the attorney-client privilege in favor of St. Paul, since the most recent e-mail in the string is communication between Mr. Zatopek and Mr. Lugrin, in which Mr. Zatopek seeks legal services from his attorney. The privilege log shows this document twice, apparently because there are two complete e-mail messages on it, one of which is dated October 9, 2009 and is from Ms. Krause of Blades to Mr. Lugrin and Mr. Zatopek, while the other is dated October 12, 2009, and is from Mr. Zatopek to Mr. Lugrin. The undersigned finds that, because Blades was the agent and representative of St. Paul, the attorney-client privilege extends to this communication by Ms. Krause

with Mr. Lugrin.  A third incomplete e-mail message is also on this page, and it is from Ms. Krause to Mr. Zatopek and mentions communications with Mr. Lugrin for the purpose of obtaining legal advice.  It is, therefore, protected by work product doctrine.  STP000125, STP000127, and STP000130 are also work product.

Accordingly, Flex's motion will be denied with regard to the following documents:   STP000123, STP000125, STP000127, STP000130, JHB000001, JHB000062-69, JHB000123, JHB000137, JHB000403, and JHB000404.


**4.    REQUEST FOR *IN CAMERA* REVIEW**

Flex requested an *in camera* review of certain documents listed on St. Paul's privilege log and marked thereon by Flex as falling into the categories of documents identified in paragraphs (a) through (d) above.  To that extent, Flex's motion was granted, and an *in camera* review was conducted.


**CONCLUSION**

For the foregoing reasons,

IT IS ORDERED that the pending motion (Rec. Doc. 34) is GRANTED IN PART and DENIED IN PART.  More specifically,

- to the extent that Flex moved for an *in camera* review of certain documents listed on the privilege logs, the motion is GRANTED;

- the undersigned finds that no decision can be made with regard to the document numbered STP000379;

- the motion is GRANTED with regard to the following documents: STP000491 - 492;

- the motion is DENIED with regard to STP000465 – 470 unless those documents are substantively identical to documents already shared with Flex in this lawsuit; if so, then the motion is GRANTED as to STP000465 – 470;

- the motion is DENIED AS MOOT with regard to all documents relating to the establishment of a reserve for the subject claim;

- the motion is DENIED AS MOOT with regard to the following documents:  JHB000002, JHB000009, JHB000061, JHB000070, JHB000071, JHB000136, JHB000139, and JHB000140; and

- in all other respects, the motion is DENIED.

IT IS FURTHER ORDERED that the motion for sanctions is DENIED.

Signed at Lafayette, Louisiana, this 10th day of June 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

-25-